**LAW OFFICES OF THOMAS M. MULLANEY**
Thomas Mullaney (TM 4274)
tmm@mullaw.org
489 Fifth Avenue, Suite 1900
New York, NY 10017
Tel: 212-223-0800

*Attorney for Plaintiff Lori D. Gordon, Individually*

AND

**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*Pro Hac Vice*)
acarney@cbplaw.com
David Slade (*Pro Hac Vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500 Telephone
(501) 312-8505 Facsimile

*Attorneys for the Proposed Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORI D. GORDON, on behalf of herself and all others similarly situated, | ) ) ) **No. 1:16-cv-06526** |
| Plaintiff, | ) ) **MEMORANDUM OF LAW IN** |
| v. | ) **SUPPORT OF PLAINTIFF'S** |
| | ) **UNOPPOSED MOTION FOR** |
| THE HAIN CELESTIAL GROUP, INC., a Delaware corporation; JASON NATURAL PRODUCTS, INC., a California corporation, | ) **PRELIMINARY APPROVAL OF** ) **CLASS ACTION SETTLEMENT** ) ) ) |
| Defendants. | ) ) ) |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     OVERVIEW OF THE LITIGATION ...............................................................2

III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS ..............3

        A.      Settlement Terms ...................................................................................3

                1.      The Settlement Benefits and Release..........................................3

                2.      Notice and Administrative Fees...................................................4

                3.      Attorneys' Fees and Service Award .............................................5

        B.      Proposed Schedule of Events..................................................................5

IV.     APPLICABLE LEGAL STANDARDS ..............................................................6

V.      THE PROPOSED SETTLEMENT WARRANTS
        PRELIMINARY APPROVAL ...........................................................................7

        A.      Certification of the Settlement Class is Appropriate ..............................7

                1.      The Class is Sufficiently Numerous ............................................8

                2.      Common Questions of Law or Fact Exist....................................8

                3.      Plaintiff's Claims are Typical of Those of the Settlement Class..................9

                4.      Plaintiff Will Adequately Protect the Interests of the
                        Settlement Class..........................................................................10

                5.      The Requirements of Rule 23(b) Are Satisfied..........................11

                        a.      Common Questions of Law or Fact Predominate..........11

                        b.      A Class Action is the Superior Method of Adjudicating
                                This Case.......................................................................13

                6.      The Settlement Class Also Satisfies Rule 23(b)(2)....................13

        B.      The Proposed Settlement Satisfies the Standards for Preliminary Approval ........14

VI.     THE PROPOSED NOTICE IS THE BEST NOTICE PRACTICABLE..........18

i

VII.    PROPOSED SCHEDULE ................................................................................................19

VIII.   CONCLUSION..........................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE NO.**

*Aguiar v. Merisant*,
  No. 14-CV-670 (C.D. Cal.)............................................................................16

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................10, 11, 13

*Astiana, et al. v. Kashi Company*,
  No. 3:11-cv-01967-H-BGS (S.D. Cal.) .....................................................16

*Baharestan v. Venus Labs*,
  No. 15-CV-3578 (N.D. Cal.) .......................................................................16

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010).........................................................................11

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013).........................................................................10

*Clark v. Ecolab*,
  2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009) ...................6

*Coffey v. Nestle USA, Inc.*,
  2015 U.S. Dist. LEXIS 90720, at *9-10 (N.D. Cal. July 10, 2015).............12, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)............................................................................8

*DeBoer v. Mellon Mortgage. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ......................................................................10

*Eggnatz, et al. v. Kashi Company*,
  No. 12-21678 (S.D. Fla.) .............................................................................17

*Elkind v. Revlon Consumer Prods. Corp.*,
  2017 U.S. Dist. LEXIS 24512, at *45 (E.D.N.Y. Feb. 17, 2017)......................6, 7, 13, 14

*Flores v. Anjost Corp.*,
  284 F.R.D. 112 *, 2012 U.S. Dist. LEXIS 85171,
  2012 WL 2339267 (S.D.N.Y. June 19, 2012) ...............................................8

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) .........................................................12

iii

*Hartley v. Wells Fargo & Co.*,
   2016 U.S. Dist. LEXIS 139874, at *8-9 (E.D.N.Y. Sept. 30, 2016) ..................................7

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229(2d Cir. 2012)......................................................................................11, 13

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005)............................................................................15

*In re Excess Value Ins. Coverage Litig.*,
   2004 U.S. Dist. LEXIS 14822, at *33 (S.D.N.Y. July 30, 2004) .....................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).............................................................................................10

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012) .....................................................................................9

*In re Luxottica Group S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................6

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 13734 (S.D.N.Y. July 8, 2005) .........................................6, 14, 16

*In re Sumitomo Copper Litig.*,
   194 F.R.D. 480 (S.D.N.Y. 2000) .....................................................................................9

*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980)............................................................................................6

*Madenlian v. Flax USA*,
   No. 13-CV-1748 (C.D. Cal.)..........................................................................................16

*Masound v. 1285 Bakery, Inc.*,
   2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. Jan. 25, 2017)....................................................8

*McAnaney v. Astoria Fin. Corp.*,
   No. 04-CV-1101, 2006 WL 2689621, at*4 (E.D.N.Y. Sept. 19, 2006) ............................10

*Mirakay v. Dakota Growers Pasta Co.*,
   2014 U.S. Dist. LEXIS 148694, at *12 and *17 (D.N.J. Oct. 20, 2014)....................12, 17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................14

*Roach v. T.L. Cannon Corp.,*
    778 F.3d 401 (2d Cir. 2015)...........................................................11

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .........................................................16

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011).........................................................12

*Thurston v. Bear Naked,*
    No. 11-CV-02890 (S.D. Cal.) .........................................................16

*Trazo v. Nestle USA, Inc.,*
    113 F. Supp. 3d 1047 (N.D. Cal. July 10, 2015) ........................................12, 17

*Tsereteli v Residential Asset Securitization Tr. 2006-A8,*
    283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................9

*Wal-mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)...........................................................9

## OTHER CITATIONS              PAGE NO.

Fed. R. Civ. P. 23(a) ................................................................ *passim*
Fed. R. Civ. P. 23(a)(1)...............................................................8
Fed. R. Civ. P. 23(a)(2)...............................................................9
Fed. R. Civ. P. 23(a)(3)...............................................................9, 10
Fed. R. Civ. P. 23(a)(4)...............................................................10
Fed. R. Civ. P. 23(b) ................................................................ *passim*
Fed. R. Civ. P. 23(b)(3)...............................................................13
Fed. Rule Civ. P. 23(b)(3)(D) .........................................................13

*Manual for Complex Litigation* § 21.633 ................................................18

New York's False Advertising Law,
    N.Y. Gen. Bus. Law § 350, *et seq.*....................................................2

New York's Deceptive Trade Practices Act,
    N.Y. Gen. Bus. Law § 349, *et seq.*....................................................2

## I.   <u>INTRODUCTION</u>

Plaintiff Lori D. Gordon ("Plaintiff" or "Settlement Class Representative") and Defendants the Hain Celestial Group, Inc. and JASON Natural Products, Inc. ("Defendants") have reached a proposed settlement (the "Settlement") to resolve all claims in the above-captioned action (the "Lawsuit").   Pursuant to the terms set forth in the Parties' Stipulation of Settlement (the "Settlement Agreement"), Plaintiff now respectfully requests this Court enter an order, in substantial form to Exhibit F of the Settlement Agreement, preliminarily approving the Settlement, provisionally certifying the Settlement Class (defined below) for settlement purposes only, appointing Plaintiff as the Settlement Class Representative and Carney Bates & Pulliam, PLLC as Class Counsel, directing that notice of the Settlement be disseminated to members of the Settlement Class in the proposed form and manner, scheduling a Settlement Hearing to consider whether the Settlement should be finally approved, and staying all further proceedings in the Lawsuit.

Preliminary approval of the proposed Settlement is warranted because, as further described herein, the proposed Settlement is "within the range of possible approval" so as to provide a reason to notify the class members of the proposed Settlement and to proceed with a fairness hearing. Indeed, the Settlement provides a $1.1 million cash Settlement Fund for the benefit of members of the Settlement Class, a significant recovery.   Moreover, the Settlement was reached only after intensive arm's-length negotiations, and does not contain any obvious deficiency nor does it improperly grant preferential treatment to the class representative or some other segment of the class.   Accordingly, Plaintiff respectfully submits that the Court should approve the terms and conditions of the Settlement and provide for notice to the Settlement Class.

## II.     OVERVIEW OF THE LITIGATION

This Lawsuit was filed as a class action against Defendants, alleging Negligent Misrepresentation, Breach of Express Warranty, Unjust Enrichment as well as violations of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.*, and New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, resulting from Defendants' deceptive marketing of their cleaning and personal care products (hereinafter "Defendants' Products") as being free of sodium lauryl sulfate ("SLS").

On November 9, 2016, Plaintiff filed an amended complaint (ECF No. 27), which was superseded by a corrected amended complaint the following day (ECF No. 28).  More specifically, Plaintiff's Amended Complaint alleges that from 2011 to 2016, Defendants marketed, advertised, and labeled the following products (the "Products") as being SLS-free even though the products contained substantial amounts of SLS:   (1) JASON's Long & Strong Jojoba Pure Natural Shampoo, (2) Volumizing Lavender Shampoo, (3) Normalizing Tea Tree Treatment Shampoo, (4) Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and (5) Smoothing Coconut Body Wash.

Soon after the filing of the Amended Complaint, Plaintiff served Defendants with her First Set of Requests for Admission, First Set of Production of Documents, and First Set of Requests for Production of Documents.

On November 30, 2016, Defendant filed a Motion to Dismiss (ECF No. 32), with a supporting memorandum (ECF No. 33). Plaintiff filed an opposition to Defendant's Motion to Dismiss on December 12, 2016; and Defendant filed a reply brief ten days later (ECF No. 36). On January 18, 2017, this Court entered an order granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 37.)

Just prior to filing their reply brief, Defendants served Plaintiff with their responses to her discovery requests. Defendants produced, among other things, internal financial figures, confidential marketing analysis, internal emails, packaging and coupons, and other documents.

Following the Court's order granting in part and denying in part Defendants' Motion to Dismiss, Defendants filed an answer (ECF No. 39), and discovery recommenced, with Plaintiff serving Defendants with her Second Set of Requests for Admission, Second Set of Production of Documents, Second Set of Requests for Production of Documents, and Notice of 30(b)(6) Deposition.

Subsequently to discovery recommencing, the Parties and their respective counsel agreed to engage in informal settlement negotiations. Over the course of a month, the Parties engaged in numerous and extensive communications that entailed exchanging additional documents, information, and proposals. In addition, Class Counsel and Defendants' counsel repeatedly conferred with their respective clients, experts, and settlement administrators. As a result, the Parties were able to reach an agreement in principle to resolve claims involved in the Lawsuit.

Thereafter, the Parties worked together to use the terms and conditions of their agreement in principle to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

## III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS

### A.    Settlement Terms

#### 1.    The Settlement Benefits and Release

The terms of the Settlement provide for Defendants to establish a cash settlement fund of $1.1 million (the "Settlement Fund") for the benefit of the Settlement Class Members. The Settlement Agreement defines the Settlement Class as follows:

all persons who purchased JASON's Long & Strong Jojoba Pure Natural Shampoo, Volumizing Lavender Shampoo, Normalizing Tea Tree Treatment Shampoo, Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and/or Smoothing Coconut Body Wash in the United States between August 17, 2011 and the Notice Date.  Excluded from the Class are:  (a) Defendants' employees, officers and directors; (b) persons or entities who purchased the above-referenced products for the purpose of re-sale; (c)  governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided herein; and (e) the Court, the Court's immediate family, and Court staff.

In exchange for the consideration from the Defendants, the Lawsuit will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against the Defendants by any member of the Settlement Class in this Lawsuit, as set forth in the Settlement Agreement.

In addition to the monetary benefits, the Settlement also provides that Defendants will not reintroduce the claim that their Products are SLS-free unless the Products' formulation has changed such that Defendants believe that they can make such a claim.

## 2. *Notice and Administrative Fees*

The Settlement contemplates and the Parties propose that Garden City Group ("GCG") act as the Settlement Administrator.  In consultation with the Parties' respective counsel, GCG has developed a notice and claims administration program designed to achieve at least a 70% notice reach.  The proposed notice program includes the following:  (1) publication of the Class Notice in *People* magazine, (2) release of the Class Notice over *PR Newswire's* US 1 and National Hispanic Newslines, (3) a six-week media campaign with the total number of views or "impressions" of the notice estimated at 300,000,000, and (4) a dedicated Settlement website. Costs incurred by the Settlement Administrator[1] in preparing and providing the Settlement Class Notice shall be paid from the Settlement Fund in accord with the Settlement Agreement.

---

[1] Currently estimated at approximately $300,000.

4

3.      *Attorneys' Fees and Service Award*

Prior to the final approval hearing and prior to the objection and exclusion deadline, Settlement Class Counsel will file a motion with the Court seeking attorneys' fees in an amount not to exceed $200,000. This amount is equivalent to approximately 20% of the Settlement Fund. At the same time, Settlement Class Counsel shall also seek a service award in the amount of $5,000 for the Plaintiff Class Representative. These motion papers will be made available to Settlement Class Members on the docket and on the dedicated Settlement website established by the Settlement Administrator.

**B.      Proposed Schedule of Events**

Consistent with the provisions of the Settlement Agreement, Plaintiff respectfully proposes the following schedule for the various Settlement events:

- Deadline to begin disseminating the Class Notices in the form and manner approved by the Court: within thirty (30) calendar days of entry of the Preliminary Approval Order;

- Deadline for filing Settlement Class Counsel's application for award of attorneys' fees and expenses: no later than forty-five (45) calendar days before the Settlement Hearing;

- Deadline for filing the motion in support of final approval of the Settlement: no later than forty-five (45) calendar days before the Final Approval Hearing;

- Deadline for submission of the requests for exclusion from the Class or objections to the Settlement, plan of allocation, the request for attorneys' fees and expenses: 120 days after entry of the Preliminary Approval Order;

- Deadline for submission of Proofs of Claim:  no later than 120 days after entry of the Preliminary Approval Order;

- Deadline for submission of reply papers in further support of Settlement or the request for attorneys' fees and expenses:  no later than twenty-one (21) calendar days before the Final Approval Hearing; and

- Settlement Hearing:  at the Court's convenience, but no earlier than 150 calendar days after entry of the Preliminary Approval Order.

## IV.    APPLICABLE LEGAL STANDARDS

Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") requires judicial approval of the compromise of claims brought on a class basis.  As explained in *In re Stock Exchs. Options Trading Antitrust Litig.*, 2005 U.S. Dist. LEXIS 13734 (S.D.N.Y. July 8, 2005), judicial approval of a proposed class action settlement is generally a two-step process.  *Id.* at *16.  During the first step, *i.e.* preliminary approval,

> courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.

*Id.* (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

As such, preliminary approval of a proposed settlement is appropriate so long as the court "find[s] that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009) (quoting *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)); *see also Elkind v. Revlon Consumer Prods. Corp.*, 2017 U.S. Dist. LEXIS 24512, at *45 (E.D.N.Y. Feb. 17, 2017) ("At the preliminary approval stage, the Court need only determine that there is probable cause to

6

submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness.").

Plaintiff respectfully submits that the requirements for preliminary approval are satisfied here. As further detailed herein, throughout negotiations and the settlement process, the Parties articulated and refined their positions, exchanged extensive information, and conducted arm's-length negotiations. As such, the proposed Settlement is the product of complicated and intensive negotiations by sophisticated and fully-informed counsel. Accordingly, the proposed Settlement falls well within the reasonable range of approval. Consequently, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects.

## V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.      <u>Certification of the Settlement Class Is Appropriate</u>

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. *Revlon*, 2017 U.S. Dist. LEXIS 24512, at *12-19; *see also Hartley v. Wells Fargo & Co*., 2016 U.S. Dist. LEXIS 139874, at *8-9 (E.D.N.Y. Sept. 30, 2016) ("Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a class settlement, ensuring notification of all class members of the terms of the proposed settlement, and setting the date and time of the final approval hearing."). Federal Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

(3) the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, all the requirements of Rule 23(a) and (b)(3) are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes.

1.    The Class is Sufficiently Numerous

To satisfy the numerosity requirement, "a plaintiff need not present a precise calculation of the number of class members[, rather] it is permissible for [a] court to rely on reasonable inferences drawn from available facts." *Flores v. Anjost Corp.*, 284 F.R.D. 112 *, 2012 U.S. Dist. LEXIS 85171, 2012 WL 2339267 (S.D.N.Y. June 19, 2012). Further, the Second Circuit has held that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Masound v. 1285 Bakery, Inc.,* 2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. Jan. 25, 2017) (same).

Here, the Parties have determined, based on Defendants' review of its internal sales records, that the Settlement Class contains tens of thousands of members. Moreover, the Settlement Class Members are geographically dispersed making joinder impracticable. Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

2.      Common Questions of Law or Fact Exist

To certify the Settlement Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation."  *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  The commonality requirement poses "a low hurdle."  *In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000) (citation omitted).  Indeed, "even a single common question will do."  *Dukes*, 131 S. Ct. at 2551 (citation omitted); *see also In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 233 n. 50 (S.D.N.Y. 2012) (same).

In this case, questions of law or fact common to the Settlement Class include, among others, the following:  (1) Whether Defendants' Products contain SLS; (2) whether Defendants knew that their Products contained SLS, or were reckless in determining whether their Products contained SLS; (3) whether Defendants warranted, either expressly or impliedly, that their Products were free of SLS; (4) whether Defendants advertised their Products as having characteristics that they do not have;  (5) whether Defendants acted deceptively, unfairly, or unconscionably in the marketing of their Products; and (6) whether Defendants acted deceptively, unfairly, or unconscionably in the addressing the complaint of consumers who purchased Defendants' Products.  The Settlement Class thus satisfies Rule 23(a)(2).

3.      Plaintiff's Claims are Typical of Those of the Settlement Class

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is "not demanding."  *Tsereteli v Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (citation omitted).  It only requires showing that "each class member's claim arises from the same course of events and each class member makes similar legal

arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted); *see also McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101, 2006 WL 2689621, at*4 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon Mortgage. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

In the case at bar, the Plaintiff has claims not only similar, but virtually identical, to members of the Settlement Class and one another.  Indeed, Plaintiff's claims are typical of the Settlement Class Members because they arise from Defendants' marketing and labeling of their Products as being free of SLS and are based on the same legal theories.  The Plaintiff and members of the Settlement Class also share a common injury as a result of Defendants' violations of the law.  As such, Rule 23(a)(3) is satisfied.

    4.    <u>Plaintiff Will Adequately Protect the Interests of the Settlement Class</u>

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997); *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (stating that Rule 23(a)(4)'s typicality requirement serves to ensure "that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.").

Here, the Plaintiff and the Settlement Class desire the same outcome of this litigation, namely to retrieve the largest possible monetary recovery from the Defendants.  Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class.  Because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class.  Moreover, there is no conflict or any antagonism between Plaintiff and the Settlement Class.  Accordingly, Plaintiff has the ability and incentive to represent the claims of the Settlement Class vigorously.

Additionally, Plaintiff has selected and retained the law firm of Carney Bates & Pulliam, PLLC ("CBP") as counsel for the Settlement Class ("Class Counsel").  CBP possesses extensive experience prosecuting class actions and has served in either a leadership or a substantive role in class action cases throughout the nation.  *See* attached firm resume.  Undoubtedly, Class Counsel is qualified to represent the Settlement Class and will, along with Plaintiff, vigorously protect the interests of the Settlement Class and maximize the recovery for all members of the Settlement Class.

5.    The Requirements of Rule 23(b) Are Satisfied

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  *Amchem Prods. v. Windsor,* 521 U.S. 591, 591-94 (1997).  These requirements are satisfied in this case.

a.    *Common Questions of Law or Fact Predominate*

In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 622.  This is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof."  *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015); *see also Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) (Rule 23 requires that common issues "predominate," no that action includes "only common questions").  In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial.  *In re Am. Int'l Grp., Inc. Sec. Litig*., 689 F.3d 229, 240 (2d Cir. 2012).  As further discussed by the court in *In re Am. Int'l Grp., Inc. Sec. Litig*.:

11

> '[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assume heightened importance and heightened scrutiny because of the danger of conflicts of interest, collusion, and unfair allocation.'

*Id*. at 239 (quoting *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 335 (3d Cir. 2011)).

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendants' Products contain SLS and whether Defendants warranted their Products as being free of SLS despite knowledge to the contrary. Moreover, the alleged damages in this Litigation are premised on a price premium theory, a damages model that has garnered approval by other courts in similar litigation. *See Garcia v. Kashi Co*., 43 F. Supp. 3d 1359, 1390 (S.D. Fla. 2014) (finding plaintiffs sufficiently alleged that they had paid a price premium in exchange for defendants' products and had they known that the products were not all natural they would not have been deprived of their money); *Mirakay v. Dakota Growers Pasta Co*., 2014 U.S. Dist. LEXIS 148694, at *12 and *17 (D.N.J. Oct. 20, 2014) (finding commonality and predominance satisfied in case where all settlement class members were allegedly damaged by having paid a price premium for a product that allegedly lacked its claimed benefits); *see also Coffey v. Nestle USA, Inc.*, 2015 U.S. Dist. LEXIS 90720, at *9-10 (N.D. Cal. July 10, 2015) (finding nonrestitutionary disgorgement theory is not the appropriate remedy for claim based on alleged mislabeling of a consumer product, rather, the proper measure of damages is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received); *Trazo v. Nestle USA, Inc*., 113 F. Supp. 3d 1047 (N.D. Cal. July 10, 2015) (same). Accordingly, this prong of Rule 23(b) is satisfied.

     b.  *A Class Action is the Superior Method of Adjudicating This Case*

  The second prong of Rule 23(b) is satisfied by the proposed Settlement.  As explained in *Amchem and In re Am. Int'l Grp., Inc. Sec. Litig,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; *In re Am. Int'l Grp., Inc. Sec. Litig,* 689 F.3d at 239.  Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

   Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally certify the proposed Settlement Class for purposes of settlement and the issuance of notice.

    6.  <u>The Settlement Class Also Satisfies Rule 23(b)(2)</u>

  The proposed Settlement Class is also well suited for certification under Rule 23(b)(2).  Rule 23(b)(2) allows class treatment when a defendant has acted or refused to act on grounds that apply generally to a class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  In the Second Circuit, courts have held "that plaintiff have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief. *Revlon*, 2017 U.S. Dist. LEXIS 24512, at *35 (internal quotations and citation omitted).  Thus, Plaintiff has standing to seek injunctive relief.

  Moreover, Plaintiff's claims arise from Defendants' alleged false advertising of their Products as SLS-free, which were uniform across the Settlement Class.  Thus, Defendants acted in a manner that applies to the proposed Settlement Class generally.  To remedy this wrong,

Defendants have removed the SLS-free claim from their Products' packaging and have agreed not to reintroduce the SLS-free claim for their Products unless the Products' formulation changes, such that Defendants reasonably believe that they can make such a claim.  "Such relief provides a single solution and will protect the rights of all consumers."  *Id*. at 37.  Accordingly, the class action also satisfies Rule 23(b)(2).

### B.      The Proposed Settlement Satisfies the Standards for Preliminary Approval

As set forth above, at the preliminary approval stage, courts evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *In re Stock Exchs. Options Trading Antitrust Litig*., 2005 U.S. Dist. LEXIS 13734, at *16; *see also Reade-Alvarez v. Eltman, Eltman & Cooper, P.C*., 237 F.R.D. 26 (E.D.N.Y. 2006) (noting that a "full fairness analysis," entailing consideration of the Grinnell factors, "is unnecessary at [the preliminary approval] stage.").  In general, "[c]ourts favor approval of class action settlements."  *Revlon*, 2017 U.S. Dist. LEXIS 24512, at *17; *In re Luxottica Group S.p.A. Secs. Litig*., 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public policy interest in quieting any litigation; this is particularly true in class actions." (internal quotations and citation omitted)).

Here, the proposed Settlement warrants preliminary approval.  The Settlement is the result of arm's-length negotiations among experienced counsel with a firm understanding of the strengths and weaknesses in this Lawsuit, and the recovery for Settlement Class Members is substantial, particularly when weighed against the risks, uncertainties, and delays of further litigation.

First, the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Lawsuit. As set forth above, Defendants and Class Counsel exchanged (1) significant discovery that included, among other things, internal financial figures, confidential marketing analysis, internal emails, packaging and coupons, (2) numerous and extensive communications regarding the Parties' position on the strengths and weaknesses of Plaintiff's claims and Defendants' defenses, (3) various settlement demands and counter-demands that were made in consultation with their respective clients, experts, and settlement administrators. These circumstances weigh in favor of approval. *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005) ("Where the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.") (internal quotations omitted); *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, at *33 (S.D.N.Y. July 30, 2004) (same).

Second, the Settlement was reached after extensive investigation and thorough discovery of the issues in the Lawsuit.  Indeed, Class Counsel, among other things, conducted an extensive pre-suit investigation into Plaintiff's and the Class's claims, prepared and filed the complaints, engaged in motion practice, which included successfully opposing Defendants' motion to dismiss, conducted discovery, and engaged in ongoing settlement negotiations. Class Counsel's work crystallized the relevant facts in the case, enabled Class Counsel to effectively value the Parties' respective positions in the Lawsuit, and verified the fairness, adequacy, and reasonableness of the terms and conditions of the Settlement. Further, the Settlement avoids the time, expense, and delay inherent in continued litigation.  Accordingly, there are no obvious deficiencies in the Settlement.

Third, there is no unduly preferential treatment to the Class Representative, as she will receive only her pro rata share of the Settlement benefits and potentially a $5,000 service award, which is subject to approval by the Court.  Such service awards are generally recognized as permissible and do not render a settlement unfair or unreasonable.  *See Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003).

Finally, and most importantly, the $1.1 million value of the Settlement falls well within the range of a reasonable settlement. As shown by the internal documents produced by Defendants, the sales figure for these Products during the class period was relatively small (less than $12 million), which makes a $1.1 million settlement sum an eminently reasonable amount.  *See In re Stock Exchs. Options Trading Antitrust Litig*., 2005 U.S. Dist. LEXIS 13734 (stating that at the preliminary approval stage, the Court need only determine whether the settlement is "within the range of possible approval.") Other courts have approved similar class action settlements in false advertising cases.  *See, e.g., Thurston v. Bear Naked,* No. 11-CV-02890 (S.D. Cal.) (approving $325,000 settlement fund in "100% natural" mislabeling case involving granola bars); *Madenlian v. Flax USA*, No. 13-CV-1748 (C.D. Cal.) (approving $330,000 settlement fund in "all natural" flax milk false advertising case). *Aguiar v. Merisant*, No. 14-CV-670 (C.D. Cal.) (approving $1.65 million settlement fund in "all natural zero calorie sweetener" mislabeling case); *Baharestan v. Venus Labs*, No. 15-CV-3578 (N.D. Cal.) (approving $925,000 settlement fund for "natural" mislabeling case).  Additionally, the Settlement yields an individual recovery of between $8.00 (with proof of purchase) and $2.00 (without proof of purchase) per unit purchased, up to maximum recoveries of $40.00 (with proof of purchase) and $10.00 (without proof of purchase) per Settlement Class Member.  These amounts are commensurate with the per-person recovery approved in similar litigation.  *See Astiana, et al. v. Kashi Company*, No. 3:11-cv-01967-H-BGS

16

(S.D. Cal.), ECF No. 242 (Sept. 2, 2014) (approving settlement of $0.50 per package with a maximum recovery of $25 per household in false advertising suit, with proof of purchase); *Eggnatz, et al. v. Kashi Company*, No. 12-21678 (S.D. Fla.), ECF No. 196 (approving settlement of $0.55 per package with a maximum recovery of $27.50 per household in false advertising suit, without proof of purchase).  Thus, the Settlement is a significant recovery for the Settlement Class and well within a reasonable range.

      As set forth above, the class damages sought in this Litigation are based on a price premium theory, which is a damages model that has been approved by other courts in similar litigation.  *See Kashi Co.*, 43 F. Supp. 3d at 1390; *Mirakay*, 2014 U.S. Dist. LEXIS 148694, at *12 and *17; *see also Coffey*, 2015 U.S. Dist. LEXIS 90720, at *9-10; *Trazo*, 113 F. Supp. 3d 1047.  Under this damages model, the Settlement consideration of $1.1 million amounts to a significant recovery. Moreover, while Plaintiff believes that she would prevail on proving price premium damages at trial, she is also mindful that such a showing would undoubtedly involve a battle of the experts. Based on these circumstances as well as the other inherent risks of continued litigation, there is no assurance that Plaintiff would ultimately prevail at trial – or even if she did, that she would be able to obtain an award of damages significantly higher than achieved through settlement.  Thus, the proposed Settlement provides the Settlement Class with substantial and immediate benefits, while eliminating the real risk of not obtaining any relief in the future.

      While Plaintiff and Class Counsel are confident in the strength of their case, they are also pragmatic in recognizing that they would have to obtain class certification and overcome Defendants' defenses on the merits at trial to obtain recovery.  During the Parties' settlement negotiations, Defendants' counsel indicated that they would vigorously oppose class certification; for example, they indicated they would have proffered expert testimony showing that consumers

bought the Products for reasons other than the SLS-free claim and would have contested any price premium damages model.  Protracted litigation carries inherent risks that would have delayed and endangered Settlement Class Members' recovery, and even if Plaintiff prevailed at trial, recovery could be delayed for years by an appeal. This Settlement provides relief to Settlement Class Members without further delay. Under these circumstances, the Plaintiff and Class Counsel appropriately determined the Settlement outweighs the risks of continued litigation. Consequently, the Court should grant preliminary approval of the Settlement.

## VI.     THE PROPOSED NOTICE IS THE BEST NOTICE PRACTICABLE

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice should inform members of the Settlement Class of the terms of the proposed Settlement and of the opportunity to present their own views on the Settlement.  *See Manual for Complex Litigation* § 21.633.

The notice program in the Settlement Agreement is the best notice practicable under the circumstances. As previously detailed, the Settlement contemplates providing notice to the Settlement Class by (1) publication of the Class Notice in *People* magazine, (2) release of the Class Notice over *PR Newswire's* US 1 and National Hispanic Newslines, (3) a six-week media campaign with total estimated impressions of 300,000,000, and (4) a dedicated Settlement website. Further, the contents of the Class Notice, Exs. C and D to the Settlement Agreement, advise Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to share in the recovery, the rights of Settlement Class Members to request exclusion from the Class or to object to the Settlement, and will provide specifics on the date, time and place of the Settlement Hearing.  Thus, the notices provide the necessary information for Class Members to make an informed decision regarding the proposed Settlement.  The notices also contain information regarding Settlement Class Counsel's fee application, Class Representative's service award, and

18

the proposed plan for allocating the Settlement proceeds among Class Members. Thus, the form

and manner of notice proposed under the Settlement fulfill all the requirements of Rule 23 and due

process. Accordingly, the Court should approve the proposed form and manner of notice.

## VII.   PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement, Plaintiff asks the Court to

set a date for the Settlement Hearing, dates for filing papers relating to final approval and attorneys'

fees, dates for sending notice to the Settlement Class, and deadlines for any requests for exclusion

or objections. Plaintiff proposes the following schedule:

| Event | Time for Compliance |
|---|---|
| Notice Date | Within 30 days of entry of the Preliminary Approval Order |
| Exclusion/ Objection Deadline | 120 days after entry of the Preliminary Approval Order |
| Claims Deadline | 120 days after entry of the Preliminary Approval Order |
| Deadline for Settlement Class Counsel's Application for Attorneys' Fees | 45 days before the Final Approval Hearing |
| Deadline for Motion in Support of Final Approval of Settlement | 35 days before the Final Approval Hearing |
| Reply brief, if any | 21 days before the Final Approval Hearing |
| Final Approval Hearing | No earlier than 150 days after entry of the Preliminary Approval Order |

## VIII.   CONCLUSION

For the foregoing reasons, the Court should enter an order (i) provisionally certifying the

proposed Settlement Class; (ii) appointing Plaintiff as Settlement Class Representative of the

Settlement Class; (iii) appointing Carney Bates & Pulliam, PLLC as Settlement Class Counsel

for the Settlement Class; (iv) preliminarily approving the Settlement of this action; (v) approving

the timing, form, content, and manner of the giving of notice of the Settlement to the members of

the Settlement Class; and (vi) setting a hearing date for the Final Approval Hearing.

Dated:  April 20, 2017                      Respectfully submitted,

                                                Thomas Mullaney (TM 4274)
                                                **LAW OFFICES OF THOMAS M. MULLANEY**
                                                489 Fifth Avenue, Suite 1900
                                                New York, NY 10017
                                                Tel: 212-223-0800
                                                tmm@mullaw.org

                                                *Attorney for Plaintiff Lori D. Gordon, Individually*

                                                -AND-

                                                Allen Carney (*Pro Hac Vice*)
                                                David Slade (*Pro Hac Vice*)

                                                519 W. 7th St
                                                Little Rock, AR  72201
                                                Tel:  (501) 312-8500
                                                Fax:  (501) 312-8505
                                                acarney@cbplaw.com
                                                toldham@cbplaw.com

                                                *Counsel for the Proposed Settlement Class*

                         BY:    */s/ Allen Carney*_____
                                                ALLEN CARNEY (AR BAR NO. 94122)

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on April 20, 2017, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Allen Carney*