**LAW OFFICES OF THOMAS M. MULLANEY**
Thomas Mullaney (TM 4274)
tmm@mullaw.org
489 Fifth Avenue, Suite 1900
New York, NY 10017
Tel: 212-223-0800

*Attorney for Plaintiff Lori D. Gordon, Individually*

AND

**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*Pro Hac Vice*)
acarney@cbplaw.com
David Slade (*Pro Hac Vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500 Telephone
(501) 312-8505 Facsimile

*Attorneys for the Proposed Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LORI D. GORDON, on behalf of herself and all others similarly situated, | ) ) ) | No. 1:16-cv-06526 |
| Plaintiff, | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S** |
| v. | ) ) | **UNOPPOSED MOTION FOR** |
| THE HAIN CELESTIAL GROUP, INC., a Delaware corporation; JASON NATURAL PRODUCTS, INC., a California corporation, | ) ) ) ) | **FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendants. | ) ) ) | |

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................................1

II.    HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION..........................2

    A.    OVERVIEW OF THE LITIGATION ...................................................2

    B.    SETTLEMENT TERMS .....................................................................4

    C.    NOTICE TO THE CLASS ..................................................................5

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
    AND SHOULD BE APPROVED BY THE COURT .......................................5

    A.    THE LAW FAVORS AND ENCOURAGES SETTLEMENTS ...........................5

    B.    THE ROLE OF THE COURT IN DETERMINING WHETHER TO
    APPROVE A CLASS ACTION SETTLEMENT

    C.    ALL CRITERIA FOR APPROVING THE SETTLEMENT ARE
    SATISFIED..................................................................................7

        1.    The Settlement Is Procedurally Fair ...........................................7

        2.    The Settlement is Substantively Fair ...........................................8

            a.    The Complexity, Expense and Likely Duration of the
            Litigation...............................................................8

            b.    The Reaction of the Class to the Settlement ...................9

            c.    The Stage of the Proceedings and the Amount of
            Discovery Completed...................................................10

            d.    The Risks of Further Litigation......................................11

            e.    Defendants' Ability to Withstand a Greater Judgment .................12

            f.    The Range of Reasonableness of the Settlement Fund in
            Light of the Best Recovery and Risks of Litigation .....................12

            g.    The Opinion of Competent Counsel .............................13

i

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE
        AND WARRANTED ........................................................................................................14

V.      THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e) ...............14

VI.     CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE**

*Aguiar v. Merisant,*
No. 14-CV-670 (C.D. Cal.)............................................................................13

*Astiana, et al. v. Kashi Company,*
No. 3:11-cv-01967-H-BGS (S.D. Cal.),
ECF No. 242 (Sept. 2, 2014)........................................................................13

*Baharestan v. Venus Labs,*
No. 15-CV-3578 (N.D. Cal.) .......................................................................13

*Charron v. Pinnacle Grp. N.Y. LLC,*
874 F. Supp. 2d 179 (S.D.N.Y. 2012)......................................................9, 12

*Charron v. Wiener,*
731 F.3d 241 (2d Cir. 2013)...........................................................................6

*Chatelain v. Prudential-Bache Sec., Inc.,*
805 F. Supp. 209 (S.D.N.Y. 1992) ..............................................................11

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)...........................................................................8

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001)..........................................................................7, 9

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...........................................................8

*Eggnatz, et al. v. Kashi Company,*
No. 12-21678 (S.D. Fla.) .............................................................................13

*Fleisher v. Phoenix Life Ins. Co.,*
NO. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574,
at *20 (S.D.N.Y. Sept. 9, 2015)...................................................................13

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005).................................................................12

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................8, 9, 10, 11, 12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918,
    at *12 (S.D.N.Y. July 27, 2007) ..........................................................................6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................11

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ............................................................................15

*In re PaineWebber Ltd. Pshps Litig.*,
    147 F.3d 132 (2d Cir. 1998)..........................................................................5, 14

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) .............................................................10

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 CIV 5173 (RPP), 2008 U.S. Dist. LEXIS 36093,
    at *18 (S.D.N.Y. May 1, 2008).........................................................................9

*Maley v. Dale Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................9, 10

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) .....................................................................10

*Madenlian v. Flax USA*,
    No. 13-CV-1748 (C.D. Cal.)............................................................................13

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    08 CIV. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913,
    at *12 (S.D.N.Y. Mar. 3, 2010) .......................................................................10

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)..........................................................................6, 7

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..............................................................................12

*Padro v. Astrue*,
    No. 11-CV-1788 (CBA)(RLM),
    2013 U.S. Dist. LEXIS 150494, at *10 (E.D.N.Y. Oct. 18, 2013) ....................7

*Plummer v. Chemical Bank*,
   668 F.2d 654 (2d Cir. 1982)...................................................................................10

*Thurston v. Bear Naked*,
   No. 11-CV-02890 (S.D. Cal.) ...............................................................................13

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223,
   at *19-20 (S.D.N.Y. June 25, 2007) .....................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................ *passim*

*Willix v. Healthfirst, Inc.*,
   No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102,
   at *11 (E.D.N.Y. Feb. 18, 2011) ...........................................................................11

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) .....................................................................9

## OTHER CITATIONS                                                          PAGE

Fed. R. Civ. P. 23 ...........................................................................................................6

Fed. R. Civ. P. 23(e)(2) ..................................................................................................6

*Manual for Complex Litigation*,
   §30.43 at 289 (3d ed. 2002) .............................................................................6, 7

*Newberg on Class Actions*,
   §11.42 (3d ed. 1992) ............................................................................................6

Newberg & Conte, *Newberg on Class Actions*,
   §11.41 (3d ed. 1992) ............................................................................................5

I.   __INTRODUCTION__.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Preliminarily Approving Class Action Settlement Agreement (the "Preliminary Approval Order"), Plaintiff Lori D. Gordon ("Plaintiff" or "Settlement Class Representative") respectfully submits this memorandum of law in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action").

The Settlement provides for the payment of $1.1 million in cash by Defendants Hain Celestial Group, Inc. and JASON Natural Products, Inc.  (collectively "Defendants") into a common fund for the benefit of the Settlement Class.  Plaintiff and Class Counsel firmly believe that the Settlement represents an excellent benefit for the Settlement Class that clearly satisfies the standard of approval, as discussed herein.   This Settlement is the product of extensive investigation, aggressive litigation and arm's-length negotiations.  The Settlement was negotiated by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and/or defenses.  While Plaintiff is confident in the merits of the claims alleged, Defendants have mounted vigorous defenses that add substantial risk to Plaintiff's ability to prevail at key benchmarks for the case (motion for class certification, anticipated motion for summary judgment, *Daubert* challenges, etc.) and ultimately prove liability and damages at trial.  Accordingly, the terms and conditions of the Settlement were fairly negotiated and reflect a fully informed and hard-fought compromise.

Additionally, the Settlement enjoys the support of the Settlement Class.  The notice plan was implemented in accordance with the Preliminary Approval Order and the Stipulation of Settlement ("Stipulation"), which included publication of the Class Notice in *People* magazine, internet banner advertisements on websites including AOL.com, MSN.com, and WSJ.com, a press

1

release distributed over PR Newswire's US1 and National Hispanic newslines, and a dedicated Settlement website.  *See* Notice Declaration of Brandon Schwartz Regarding Notice and Settlement Administration ("Decl. of Settlement Admin.") at ¶¶ 2-8.  As of the date of this filing, not one individual has objected to the Settlement nor requested to be excluded.[1]  *See id.* at ¶¶ 10-11; *see also* Declaration of Allen Carney ("Carney Decl.") at ¶¶ 7 and 35-36.

Accordingly, Plaintiff and Class Counsel respectfully request that the Court finally approve the Settlement as fair, reasonable, and adequate.

## II.   HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION.

### A.   OVERVIEW OF THE LITIGATION.

This lawsuit was filed as a class action against Defendants, alleging Negligent Misrepresentation, Breach of Express Warranty, Unjust Enrichment as well as violations of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.*, and New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, resulting from Defendants' deceptive marketing of their cleaning and personal care products (hereinafter "Defendants' Products") as being free of sodium lauryl sulfate ("SLS").

On November 9, 2016, Plaintiff filed an amended complaint (ECF No. 27), which was superseded by a corrected amended complaint the following day (ECF No. 28).  More specifically, Plaintiff's Amended Complaint alleges that from 2011 to 2016, Defendants marketed, advertised, and labeled the following products (the "Products") as being SLS-free even though the products contained amounts of SLS:  (1) JASON's Long & Strong Jojoba Pure Natural Shampoo, (2)

---

[1] The deadline for exclusion and objections is August 14, 2017.  To the extent any objections and/or exclusions are filed, Plaintiff will provide a supplemental pleading by August 28, 2017.

Volumizing Lavender Shampoo, (3) Normalizing Tea Tree Treatment Shampoo, (4) Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and (5) Smoothing Coconut Body Wash.

Soon after the filing of the Amended Complaint, Plaintiff served Defendants with her First Set of Requests for Admission, First Set of Production of Documents, and First Set of Requests for Production of Documents.

On November 30, 2016, Defendant filed a Motion to Dismiss (ECF No. 32), with a supporting memorandum (ECF No. 33). Plaintiff filed an opposition to Defendant's Motion to Dismiss on December 12, 2016; and Defendant filed a reply brief ten days later (ECF No. 36). On January 18, 2017, this Court entered an order granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 37.)

Just prior to filing their reply brief, Defendants served Plaintiff with their responses to her discovery requests.   Defendants produced, among other things, internal financial figures, confidential marketing analysis, internal emails, packaging and coupons, and other documents.

Following the Court's order granting in part and denying in part Defendants' Motion to Dismiss, Defendants filed an answer (ECF No. 39), and discovery recommenced, with Plaintiff serving Defendants with her Second Set of Requests for Admission, Second Set of Production of Documents, Second Set of Requests for Production of Documents, and Notice of 30(b)(6) Deposition.

Subsequently to discovery recommencing, the Parties and their respective counsel agreed to engage in informal settlement negotiations. Over the course of a month, the Parties engaged in numerous and extensive communications that entailed exchanging additional documents, information, and proposals.   In addition, Class Counsel and Defendants' counsel repeatedly

conferred with their respective clients, experts, and settlement administrators. As a result, the Parties were able to reach an agreement in principle to resolve claims involved in the Action.

Thereafter, the Parties worked together to use the terms and conditions of their agreement in principle to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Stipulation and the exhibits attached thereto.

Following execution of the Stipulation, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, which the Court granted on May 5, 2017.

### B.  SETTLEMENT TERMS.

The terms of the Settlement provide for Defendants to establish a cash settlement fund of $1.1 million (the "Settlement Fund") for the benefit of the Settlement Class Members. The Stipulation defines the Settlement Class as follows:

> all persons who purchased JASON's Long & Strong Jojoba Pure Natural Shampoo, Volumizing Lavender Shampoo, Normalizing Tea Tree Treatment Shampoo, Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and/or Smoothing Coconut Body Wash in the United States between August 17, 2011 and June 2, 2017.  Excluded from the Class are:  (a) Defendants' employees, officers and directors; (b) persons or entities who purchased the above-referenced products for the purpose of re-sale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided herein; and (e) the Court, the Court's immediate family, and Court staff.

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against the Defendants by any member of the Settlement Class in this Action, as set forth in the Stipulation.

In addition to the monetary benefits, the Settlement also provides that Defendants will not reintroduce the claim that their Products are SLS-free unless the Products' formulation has changed such that Defendants believe that they can make such a claim.

## C.       NOTICE TO THE CLASS.

Pursuant to the Preliminary Approval Order, notice to the Settlement Class commenced on June 2, 2017.  *See* Decl. of Settlement Admin. at ¶ 3.  The Notice Program is comprised of four parts:  (1) print publication notice, which appeared in *People* magazine's June 23, 2017 issue, (2) internet banner advertising, running from June 2, 2017 through July 13, 2017 on over 3 million websites including AOL.com, MSN.com, and WSJ.com, along with Spanish language websites such as Univision.com, Telemundo.com, and Vogue.es, (3) press release notice, which was distributed over PR Newswire's US1 and National Hispanic newslines on June 5, 2017, and (4) a dedicated settlement website, www.GordonSettlement.com.  *See id.* at ¶¶ 4-8.  In addition, the Settlement Administrator maintains a toll-free telephone number with an Interactive Voice Response ("IVR") system, to answer questions and provide information to Class Members.  *See id.* at ¶ 9.

The deadline to request exclusion or object is August 14, 2017, and the deadline to make a claim is September 18, 2017.  To date, 420 Class Members have made claims, and no Class Members have objected to or requested exclusion from the Settlement.  *See id.* at ¶¶ 10-12; *see also* Carney Decl. at ¶¶ 7 and 35-36.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.

### A.       THE LAW FAVORS AND ENCOURAGES SETTLEMENTS.

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  This policy is especially strong with respect to class action litigation, which is notoriously complex.  *In re PaineWebber Ltd. Pshps Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing the "strong judicial policy in favor of settlements, particularly in the class action context."); Newberg & Conte,

*Newberg on Class Actions*, §11.41 (3d ed. 1992) ("[T]he compromise of complex litigation is encouraged by the courts and favored by public policy").

## B.   THE ROLE OF THE COURT IN DETERMINING WHETHER TO APPROVE A CLASS ACTION SETTLEMENT.

Rule 23 requires court approval of any voluntary compromise of a class action and requires notice regarding the proposed settlement be provided to all class members.  *See* Fed. R. Civ. P. 23. In considering whether to approve a proposed settlement, a court is tasked with determining whether the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).  The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement agreement is both:  (1) procedurally fair; and (2) substantively fair.  *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009).  In recognition of the "strong judicial policy in favor of settlements, particularly in the class action context," courts evaluating settlement agreements adopt a presumption of both their procedural and substantive fairness when a settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *See Wal-Mart Stores*, 396 F.3d at 116; *McReynolds*, 588 F.3d at 803; *see also Manual for Complex Litigation*, §30.43 at 289 (3d ed. 2002); *Newberg on Class Actions*, §11.42 (3d ed. 1992) ('[A]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.").  "Absent fraud or collusion, [ ] court[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

When viewed under these standards, it is clear that the Settlement is both procedurally and substantively fair, and, as such, is entitled to final approval.

C.     ALL  CRITERIA  FOR  APPROVING  THE  SETTLEMENT  ARE
SATISFIED.

1.     The Settlement Is Procedurally Fair.

To determine procedural fairness, courts examine the negotiating process leading to the
settlement.  *Wal-Mart Stores*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d
Cir. 2001).  A party must show that the agreement "is the product of arm's-length, good faith
negotiations."  *McReynolds*, 588 F. 3d at 804; *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM),
2013 U.S. Dist. LEXIS 150494, at *10 (E.D.N.Y. Oct. 18, 2013) ("Where the integrity of the
negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed
settlement.").  A "presumption of fairness, adequacy and reasonableness may attach to a class
settlement reached in arm's-length negotiations between experienced, capable counsel after
meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex
Litigation, Third*, § 30.42 (1995)); *D'Amato*, 236 F.3d at 85.

Here, the Settlement was intensely negotiated by attorneys with substantial experience in
class action litigation.  *See* Carney Decl. at ¶ 2 and Ex. 2.  Moreover, at the time the Settlement
was reached, each side had a keen understanding of the strengths and weaknesses of Plaintiff's
claims and Defendants' defenses.  *See id*. at ¶¶ 4 and 37.  Based on their knowledge of the factual
and legal issues applicable to this case, as well as their years of experience, it is the considered
judgment of Class Counsel that the Settlement is in the best interest of the Settlement Class.  *See
id*. at ¶ 40.

Furthermore, throughout the course of this litigation, Plaintiff's and Defendants' counsel
have zealously and vigorously represented the interests of their respective clients, without a trace
of collusion.  *See* Carney Decl. at ¶ 37.  As such, there is no reason to doubt that the Settlement
was achieved in good faith through arm's-length negotiations and that Plaintiff was represented

by experienced and competent counsel who professionally handled this matter in the best interest of the Settlement Class.  Thus, the Settlement is procedurally fair.

## 2.     The Settlement is Substantively Fair.

To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (internal citations omitted).  For the reasons discussed below, the *Grinnell* factors all weigh in favor of the Settlement.  Consequently, the Court should grant final approval of the Settlement.

### a.     The Complexity, Expense and Likely Duration of the Litigation.

Consumer class action lawsuits, like this action, are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  In assessing the merits of the proposed Settlement, Class Counsel considered the disputed factual and legal questions in this Action.  The parties disagreed on both liability and damages.  Plaintiff has alleged that Defendants used deceptive marketing gimmicks to mislead consumers into believing that their products were free of sodium lauryl sulfate ("SLS"), and, in turn, safer, more natural, and more environmentally friendly than their competitors' products.  Defendants have vehemently denied these allegations.  As such, should this Court not approve the Settlement, litigation would resume

8

with substantive discovery, class certification, summary judgment motions, and likely appeals by whichever party does not prevail.  Moreover, if the case were to proceed to trial, the trial would be fact-intensive and result in significant expense to all parties.

Settlement, on the other hand, will result in prompt and equitable payments to the Settlement Class Members who submit timely and valid Claims. Thus, this factor weighs in favor of Final Approval.  *In re Austrian*, 80 F. Supp. 2d at 174-75.

### b.  The Reaction of the Class to the Settlement.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  In this regard, the lack of a significant number of class member objections "may itself be taken as evidencing the fairness of a settlement." *See D'Amato*, 236 F.3d at 86 (holding that the district court properly concluded that 18 objections from a class of 27,883 weighed in favor of settlement); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196 (S.D.N.Y. 2012) (finding settlement entitled to "initial presumption of fairness, reasonableness, and adequacy" where less than 1% of the class filed objections).

Similarly, a low opt-out rate is also evidence of the fairness and adequacy of a settlement and supports approval. *See In re Sony SXRD Rear Projection Television Class Action Litig*., No. 06 CIV. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008) (finding this factor weighed in favor of final approval where only 22 class members chose to opt out of the class of 175,000); *Wright v. Stern*, 553 F. Supp. 2d 337, 343-5 (S.D.N.Y. 2008) (noting that where only 13 out of 3,500 class members objected and only 3 opted-out, "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.").

Here, to date, not one Settlement Class Member has requested exclusion or objected to the Settlement. This favorable response demonstrates the Settlement Class supports the Settlement, which weighs in favor of final approval. *Maley*, 186 F. Supp. 2d at 374 (lack of objections to a settlement "attests to the approval of the Class").

**c.      The Stage of the Proceedings and the Amount of Discovery Completed.**

The Court next considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted). "To approve a proposed settlement, . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian*, 80 F. Supp. at 176 (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). Thus, "the pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *McMahon v. Olivier Cheng Catering & Events, LLC*, 08 CIV. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *12 (S.D.N.Y. Mar. 3, 2010) (citation omitted).

Here, Class Counsel conducted extensive legal and factual analysis of the claims asserted, and have completed sufficient discovery, which included production of, among other things, internal financial figures, confidential marketing analysis, internal emails, packaging and coupons. As such, Class Counsel was well positioned to evaluate the merits of Plaintiff's claims and Defendants' defenses. Moreover, the legal issues in this case were thoroughly explored and challenged in Defendants' motion to dismiss. Accordingly, Plaintiff and Class Counsel had sufficient information to evaluate and assess the terms of the Settlement.

10

### d.   The Risks of Further Litigation.

The fourth, fifth and sixth *Grinnell* factors are all met in this case. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc*., No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted). Settlements, because they avoid merits and class certification adjudication, remove uncertainty over establishing a defendant's liability and maintaining class certification. *See id*.; *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 118 (S.D.N.Y. 2009); *Velez v. Majik Cleaning Serv., Inc*., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *19-20 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted). The risk of obtaining and maintaining class status through trial is an important consideration. *See In re Giant Interactive Grp., Inc. Sec. Litig*., 279 F.R.D. 151, 162 (S.D.N.Y. 2011); *In re Initial Pub. Offering,* 260 F.R.D. at 118 (noting "decertification is always a likely possibility during trial in complex class actions").

While Plaintiff and Class Counsel are confident in the strength of their case, they are also pragmatic in recognizing that they would face hurdles in obtaining class certification and maintaining certification through trial, as well as establishing liability and damages at trial. Indeed, courts routinely acknowledge the difficulty in proving damages where reliance on experts is necessary. *See In re Giant Interactive Grp., Inc. Sec. Litig*., 279 F.R.D. at 162 (stating "proving damages would come down to a 'battle of the experts,' and it is impossible to predict which expert and theory of damages a jury would accept."); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("In class actions, the 'complexities of calculating damages increase geometrically.'") (citation omitted). Likewise, maintaining a class through trial, which would entail extensive and expensive briefing by both parties, is by no means assured. Indeed,

11

Defendants indicated that they would have vigorously opposed class certification and would have sought to proffer expert testimony showing that consumers bought the Products for reasons other than the SLS-free claim.  Defendants also stated they would have contested any price premium damages model.  The Settlement avoids these risks and uncertainties.

<strong>e.      Defendants' Ability to Withstand a Greater Judgment.</strong>

The seventh *Grinnell* factor—the ability of a defendant to withstand a greater judgment— has, in practice, transformed into an acknowledgement that it is more important that a class receive some relief than the speculative possibility of "yet more" relief.  *Charron*, 874 F. Supp. 2d at 201. A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  The Settlement here affords Settlement Class Members immediate and significant monetary benefits, and by resolving the Settlement Class' claims, the Settlement removes further litigation costs.  Thus, this factor weighs in favor of final approval.

<strong>f.      The Range of Reasonableness of the Settlement Fund in Light<br/>of the Best Recovery and Risks of Litigation.</strong>

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, while Plaintiff has calculated her maximum potential recovery to be a figure slightly higher than the settlement amount, the $1.1 million value of the Settlement falls well within the

12

range of a reasonable settlement.  As shown by the internal documents produced by Defendants, the sales figure for the challenged Products during the class period was relatively small (less than $12 million), which makes a $1.1 million settlement sum an eminently reasonable amount.  *See, e.g., Thurston v. Bear Naked,* No. 11-CV-02890 (S.D. Cal.) (approving $325,000 settlement fund in "100% natural" mislabeling case involving granola bars); *Madenlian v. Flax USA*, No. 13-CV-1748 (C.D. Cal.) (approving $330,000 settlement fund in "all natural" flax milk false advertising case).  *Aguiar v. Merisant*, No. 14-CV-670 (C.D. Cal.) (approving $1.65 million settlement fund in "all natural zero calorie sweetener" mislabeling case); *Baharestan v. Venus Labs*, No. 15-CV-3578 (N.D. Cal.) (approving $925,000 settlement fund for "natural" mislabeling case).  Additionally, the Settlement yields an individual recovery of between $8.00 (with proof of purchase) and $2.00 (without proof of purchase) per unit purchased, up to maximum recoveries of $40.00 (with proof of purchase) and $10.00 (without proof of purchase) per Settlement Class Member.  These amounts are commensurate with the per-person recovery approved in similar litigation.  *See Astiana, et al. v. Kashi Company*, No. 3:11-cv-01967-H-BGS (S.D. Cal.), ECF No. 242 (Sept. 2, 2014) (approving settlement of $0.50 per package with a maximum recovery of $25 per household in false advertising suit, with proof of purchase); *Eggnatz, et al. v. Kashi Company*, No. 12-21678 (S.D. Fla.), ECF No. 196 (approving settlement of $0.55 per package with a maximum recovery of $27.50 per household in false advertising suit, without proof of purchase).  Thus, the Settlement represents a compromise well within a reasonable range.

### g.      The Opinion of Competent Counsel.

Finally, the opinion of experienced counsel is entitled to considerable weight.  *See Fleisher v. Phoenix Life Ins. Co.,* NO. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, at *20 (S.D.N.Y. Sept. 9, 2015) ("Courts give counsel's opinion considerable weight because they are closest to the facts

and risks associated with the litigation."); *In re PaineWebber*, 171 F.R.D. at 125 ("great weight is accorded to the recommendations of counsel").

As set forth above, both parties were represented by well-respected law firms that have extensive experience in complex litigation and that vigorously pursued their respective clients' interests.  Based on their knowledge of the factual and legal issues applicable to this case, as well as their years of experience, it is the considered judgment of Class Counsel that the Settlement is in the best interest of the Class.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

Here, in its Preliminary Approval Order, the Court previously determined that certification of the action for settlement purposes is appropriate.  Specifically, the Court found that the Settlement Class satisfied each of the requirements of Federal Rule of Civil Procedure 23 in that (a) the Class size is sufficiently numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims or defenses of the Plaintiff are typical of the claims or defenses of the Class; (d) Plaintiff and Class Counsel will fairly and adequately protect the interests of the Class; (e) the common questions of law and fact predominate; and (f) the class mechanism is the superior method for fairly and efficiently adjudicating the controversy.  *See* ECF No. 47 at pp. 2-3.  For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## V.   THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e).

The Federal Rules of Civil Procedure and the Due Process Clause require that notice to the class of a class action settlement "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (internal quotations and citation omitted).  The

14

standard for determining whether a class action settlement notice satisfies this requirement "is measured by reasonableness."  *Id.* at 113; *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation omitted) ("a settlement notice need only satisfy the broad reasonableness standards imposed by due process.").

Here, notice was accomplished through:  (1) print publication notice, which appeared in *People* magazine's June 23, 2017 issue, (2) internet banner advertising, running from June 2, 2017 through July 13, 2017 on over 3 million websites including AOL.com, MSN.com, and WSJ.com, along with Spanish language websites such as Univision.com, Telemundo.com, and Vogue.es, (3) press release notice, which was distributed over PR Newswire's US1 and National Hispanic newslines on June 5, 2017, and (4) a dedicated settlement website, www.GordonSettlement.com, which provides an explanation of the litigation, the Settlement, and important dates and allows Class Members to obtain copies of pertinent court filings and Settlement documents 24 hours a day.  *See* Decl. of Settlement Admin. at ¶¶ 2-8.  In addition, the settlement administrator established a call center with a toll-free number and Interactive Voice Response (IVR) system.  *Id.* at ¶ 9.

Moreover, the content of the notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery, to request exclusion from the Settlement Class, or to object to the Settlement; and the date, time and place of the final approval hearing.  *See* Carney Decl. at ¶ 33.  Thus, the notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.  The notices also contained information regarding counsel's fee application, the proposed plan for allocating the Settlement Fund, and the requested service award to the

15

Settlement Class Representative.  *See id.*  Finally, the claims form – which can be conveniently submitted on-line or in paper form – is straightforward and simple to complete.

    In sum, the form and manner of notice and claims procedure fulfill all of the requirements of Rule 23 and due process.

**VI.     CONCLUSION.**

    In accordance with Rule 23 and applicable case law, the Settlement fairly, adequately, and reasonably resolves the disputed allegations of the Action.  For all of the foregoing reasons, including the numerous risks associated with the continued litigation of the Action, the positive reaction of the Settlement Class, the informed and arm's-length nature of the parties' negotiation, and the informed opinion of the parties' highly experienced counsel, the Settlement should be finally approved.

Dated:  June 26, 2017                  Respectfully submitted,

                                        Thomas Mullaney (TM 4274)
                                        **LAW OFFICES OF THOMAS M. MULLANEY**
                                        489 Fifth Avenue, Suite 1900
                                        New York, NY 10017
                                        Tel: 212-223-0800
                                        tmm@mullaw.org

                                        *Attorney for Plaintiff Lori D. Gordon, Individually*

                                        -AND-

                                        Allen Carney (*Pro Hac Vice*)
                                        David Slade (*Pro Hac Vice*)
                                        **CARNEY BATES & PULLIAM, PLLC**
                                        519 W. 7th St
                                        Little Rock, AR  72201
                                        Tel:  (501) 312-8500
                                        Fax:  (501) 312-8505
                                        acarney@cbplaw.com
                                        toldham@cbplaw.com

                                        *Counsel for the Proposed Settlement Class*

16

BY:    */s/ Allen Carney*                          
ALLEN CARNEY (AR BAR NO. 94122)

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on June 26, 2017, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Allen Carney*
ALLEN CARNEY

18