**LAW OFFICES OF THOMAS M. MULLANEY**
Thomas Mullaney (TM 4274)
tmm@mullaw.org
489 Fifth Avenue, Suite 1900
New York, NY 10017
Tel: 212-223-0800

*Attorney for Plaintiff Lori D. Gordon, Individually*

AND

**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*Pro Hac Vice*)
acarney@cbplaw.com
David Slade (*Pro Hac Vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500 Telephone
(501) 312-8505 Facsimile

*Attorneys for the Proposed Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LORI D. GORDON, on behalf of herself and all others similarly situated, | ) ) ) | No. 1:16-cv-06526 |
| Plaintiff, | ) ) | **MEMORANDUM OF LAW IN** |
| v. | ) ) | **SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF** |
| THE HAIN CELESTIAL GROUP, INC., a Delaware corporation; JASON NATURAL PRODUCTS, INC., a California corporation, | ) ) ) ) | **ATTORNEYS' FEES AND SERVICE AWARD** |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................................1

II.     HISTORY, BACKGRGOUND AND SETTLEMENT OF THE ACTION.......................2

        A.      OVERVIEW OF THE LITIGATION ...................................................2

        B.      SETTLEMENT TERSM ........................................................................3

        C.      NOTICE TO THE CLASS .....................................................................4

III.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR,
        REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES .................5

        A.      CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE ..........................5

        B.      THE PRECENTAGE METHOD IS THE PREFERRED METHOD IN
                THE SECOND CIRCUIT WHEN AWARDING ATTORNEYS' FEES
                IN A COMMON FUND CASE.........................................................7

        C.      CONSIDERATION OF APPLICABLE CRITERIA DEMONSTRATES
                THE REQUESTED FEE IS REASONABLE .......................................10

                1.      The Goldberger Factors Support Class Counsel's Fee Request.................10

                        a.      Counsel's Time and Labor .................................................10

                        b.      Magnitude and Complexity of the Litigation................................11

                        c.      Risk of Litigation .................................................11

                        d.      Quality of Representation ...............................................13

                        e.      Fee in Relation to the Settlement....................................14

                        f.      Public Policy Considerations ..........................................15

IV.     THE LODESTAR CROSS CHECK FURTHER SUPPORTS THE REQUESTED
        ATTORNEYS FEES AND COSTS .................................................................16

V.      THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD
        BE APPROVED ............................................................................................18

VI.     CONCLUSION..............................................................................................19

i

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                **PAGE**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008)..........................................................................................10, 17

*Asare v. Change Grp. New York, Inc.*,
    No. 12 Civ. 3371 (CM), 2013 U.S. Dist. LEXIS 165935,
    (S.D.N.Y. Nov. 18, 2013) ............................................................................................17

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-cv-3124, 2017 U.S. Dist. LEXIS 44548
    (E.D.N.Y. Mar. 27, 2017) ............................................................................................18

*Banyai v. Mazur*,
    No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272,
    (S.D.N.Y. Mar. 30, 2007) ..............................................................................................9

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008)..........................................................................................13

*Beckman v. KeyBank*, N.A.,
    293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)........................................................................................................5

*Central R.R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885)........................................................................................................5

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ..........................................................................17

*Cohen v. Apache Corp.*,
    No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211 ...........................................................14
    (S.D.N.Y. Apr. 21, 1993)

*Covillo v. Specialtys Cafe*,
    No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837,
    (N.D. Cal. Mar. 6, 2014)...............................................................................................19

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..........................................................................................12

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) ......................................................................15

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................................18

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................9

*Farrar v. Hobby*,
    506 U.S. 103 (1992) .......................................................................................13

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174, 189 (W.D.N.Y. 2005) ...............................................13,14,16

*Grace v. Ludwig*,
    484 F.2d 1262 (2d Cir. 1973).........................................................................15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................... *passim*

*Hall v. Cole*,
    412 U.S. 1 (1973) .............................................................................................6

*Haught v. Summit Res., LLC*, No,
    1:15-cv-0069, 2016 U.S. Dist. LEXIS 45054,
    (M.D. Pa. Apr. 2016) ......................................................................................19

*Hicks v. Stanley*,
    No. 01 CIV. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890,
    (S.D.N.Y. Oct. 24, 2005) ...............................................................................16

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    No. 03 Civ. 5755, 2006 U.S. Dist. LEXIS 84621,
    (S.D.N.Y. Nov. 16, 2006) ..............................................................................13

*In re American Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101,
    (S.D.N.Y. Sept. 28, 2006)............................................................................4, 7

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................11

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................................16

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ......................................................................................8

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ...........................................................................14

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-MD-2476 (DLC), 2016 U.S. Dist. LEXIS 54587,
    (S.D.N.Y. Apr. 26, 2016)...........................................................................................17

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 CV 4318 HB, 2001 U.S. Dist. LEXIS 8418,
    (S.D.N.Y. June 22, 2001)..........................................................................................12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918,
    (S.D.N.Y. July 27, 2007) ............................................................................................9

*In re Gilat Satellite Networks, Ltd.*,
    No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964,
    (E.D.N.Y. Sept. 18, 2007).........................................................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................9, 13

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ..............................................................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)........................................................14

*In re Lloyd's Am. Trust Fund Litig.*,
    96 Civ. 1262, 2002 U.S Dist. LEXIS 22663
    (S.D.N.Y. Nov. 26, 2002) ..........................................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................7, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................................17

*In re Polaroid ERISA Litig.*,
   No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983,
   (S.D.N.Y. July 19, 2007) ....................................................................................8

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ....................................................................12

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996) ......................................................................11

*In re Ramp Corp. Sec. Litigation*,
   No. 05 Civ 6521, 2008 U.S. Dist. LEXIS 213,
   (S.D.N.Y. Jan. 4, 2008)................................................................................7, 8, 9

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999).............................................................8, 15

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................................5

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..............................................................16

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................7

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)............................................................................................15

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
   No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429,
   (S.D.N.Y. Oct. 26, 2004) ..............................................................................8, 16

*Long v. HSBC USA, Inc.*,
   No. 14 Civ. 6233 (HBP), 2016 U.S. Dist. LEXIS 124199,
   (S.D.N.Y. Sept. 13, 2016) ..................................................................................14

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................14, 17

*McGreevy v. Life Alert Emergency Response, Inc.*,
   No. 14 Civ. 7457 (LGS), 2017 U.S. Dist. LEXIS 65085,
   (S.D.N.Y. April 27, 2017)...................................................................................14

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970).............................................................................................5

v

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 CIV 4270 (PAC), 2009 WL 5851465,
    (S.D.N.Y. Mar. 31, 2009) ........................................................................................14, 18

*Parker v. Jeckyll & Hyde Entm't Holdings, LLC*,
    2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. 2010) ............................................................18

*Perdue v. Kenny A. ex rel Winn*,
    130 S. Ct. 1662 (2010) ...................................................................................................17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................................15

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)..............................................................................................9

*Schneider v. Citicorp Mortg.*, Inc.,
    324 F. Supp. 2d 372 (E.D.N.Y. 2004) ..............................................................................9

*Slomovics v. All For A Dollar*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ...................................................................................6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)...........................................................................7, 8

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144
    (S.D.N.Y. Jan. 31, 2007)................................................................................................13

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ......................................................................................9

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) .............................................................................19

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205,
    (S.D.N.Y. Nov. 6, 2000) ..................................................................................................9

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223,
    (S.D.N.Y. June 22, 2007)............................................................................................8, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................................7

*Williams v. MGM-Pathe Communs. Co.*,
    129 F.3d 1026 (9th Cir. Nov. 19, 1997) ...............................................................................6

*Zink v. First Niagara Bank,*
    *N.A.*, 13-cv-01076-JJM, 2016 U.S. Dist. LEXIS 179900,
    (W.D.N.Y. Dec. 29, 2016) .......................................................................................................6

I.      **INTRODUCTION**.

Plaintiff Lori D. Gordon ("Plaintiff" or "Settlement Class Representative") and Class Counsel, pursuant to the settlement (the "Settlement") reached between Plaintiff and Defendants Hain Celestial Group, Inc. and JASON Natural Products, Inc. (collectively "Defendants") respectfully request the Court approve this application for attorneys' fees and a service award.

As set forth below and in Plaintiff's Memorandum of Law in Support of Motion for Final Approval, the relief secured by the Settlement confers a substantial benefit on Settlement Class members as well as the public in general.  As such, Class Counsel is entitled to an award of reasonable attorneys' fees and the Settlement Class Representative is entitled to a service award.

In this regard, Class Counsel is seeking an award of attorneys' fees and costs of $200,000 and a service award to the Settlement Class Representative in the amount of $5,000 for her contributions to the Action.  The fee request is equivalent to approximately 18% of the $1.1 million Settlement Fund secured in this Action and is more than reasonable when consideration is given to the benefits achieved and the time and effort expended by Class Counsel.  To highlight Class Counsel's efforts in this action (the "Action"):  (1) Class Counsel engaged in protracted litigation against well-financed Defendants, even though recovery was uncertain, (2) Class Counsel engaged in extensive pre-suit investigation, (3) Class Counsel prepared and filed the complaint, (4) Class Counsel successfully opposed Defendants' motion to dismiss, (5) Class Counsel propounded multiple discovery requests, undertaking significant discovery, and (6) Class Counsel prepared for and participated in protracted settlement negotiations.

In light of the foregoing, Class Counsel requests the Court grant the instant motion and award Class Counsel attorneys' fee and costs in the amount of $200,000 and award the Settlement Class Representative a service award in the amount of $5,000.

1

## II.    HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION.

### A.    OVERVIEW OF THE LITIGATION.

This Action was filed as a class action against Defendants, alleging Negligent Misrepresentation, Breach of Express Warranty, Unjust Enrichment as well as violations of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.*, and New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, resulting from Defendants' deceptive marketing of their cleaning and personal care products (hereinafter "Defendants' Products") as being free of sodium lauryl sulfate ("SLS").

On November 9, 2016, Plaintiff filed an amended complaint (ECF No. 27), which was superseded by a corrected amended complaint the following day (ECF No. 28).  More specifically, Plaintiff's Amended Complaint alleges that from 2011 to 2016, Defendants marketed, advertised, and labeled the following products (the "Products") as being SLS-free even though the products contained amounts of SLS:  (1) JASON's Long & Strong Jojoba Pure Natural Shampoo, (2) Volumizing Lavender Shampoo, (3) Normalizing Tea Tree Treatment Shampoo, (4) Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and (5) Smoothing Coconut Body Wash.

Soon after the filing of the Amended Complaint, Plaintiff served Defendants with her First Set of Requests for Admission, First Set of Production of Documents, and First Set of Requests for Production of Documents.

On November 30, 2016, Defendant filed a Motion to Dismiss (ECF No. 32), with a supporting memorandum (ECF No. 33).  Plaintiff filed an opposition to Defendant's Motion to Dismiss on December 12, 2016; and Defendant filed a reply brief ten days later (ECF No. 36).  On January 18, 2017, this Court entered an order granting in part and denying in part Defendants' Motion to Dismiss.  (ECF No. 37.)

Just prior to filing their reply brief, Defendants served Plaintiff with their responses to her discovery requests.   Defendants produced, among other things, internal financial figures, confidential marketing analysis, internal emails, packaging and coupons, and other documents.

Following the Court's order granting in part and denying in part Defendants' Motion to Dismiss, Defendants filed an answer (ECF No. 39), and discovery recommenced, with Plaintiff serving Defendants with her Second Set of Requests for Admission, Second Set of Production of Documents, Second Set of Requests for Production of Documents, and Notice of 30(b)(6) Deposition.

Subsequently to discovery recommencing, the Parties and their respective counsel agreed to engage in informal settlement negotiations.   Over the course of a month, the Parties engaged in numerous and extensive communications that entailed exchanging additional documents, information, and proposals.   In addition, Class Counsel and Defendants' counsel repeatedly conferred with their respective clients, experts, and settlement administrators. As a result, the Parties were able to reach an agreement in principle to resolve claims involved in the Litigation.

Thereafter, the Parties worked together to use the terms and conditions of their agreement in principle to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Stipulation of Settlement (the "Stipulation") and the exhibits attached thereto.

Following execution of the Stipulation, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, which the Court granted on May 5, 2017.

B.      SETTLEMENT TERMS.

The terms of the Settlement provide for Defendants to establish a cash settlement fund of

$1.1 million (the "Settlement Fund") for the benefit of the Settlement Class Members. The

Stipulation defines the Settlement Class as follows:

> all persons who purchased JASON's Long & Strong Jojoba Pure Natural Shampoo,
> Volumizing Lavender Shampoo, Normalizing Tea Tree Treatment Shampoo,
> Dandruff Relief 2 in 1 Treatment Shampoo & Conditioner, and/or Smoothing
> Coconut Body Wash in the United States between August 17, 2011 and the Notice
> Date.  Excluded from the Class are:  (a) Defendants' employees, officers and
> directors; (b) persons or entities who purchased the above-referenced products for
> the purpose of re-sale; (c) governmental entities; (d) persons who timely and
> properly exclude themselves from the Class as provided herein; and (e) the Court,
> the Court's immediate family, and Court staff.

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice

upon final approval of the Settlement, and the Settlement Class Members will thereby release all

claims which have been or could have been asserted against the Defendants by any member of the

Settlement Class in this Action, as set forth in the Stipulation.

In addition to the monetary benefits, the Settlement also provides that Defendants will not

reintroduce the claim that their Products are SLS-free unless the Products' formulation has

changed such that Defendants believe that they can make such a claim.

C.      NOTICE TO THE CLASS.

Pursuant to the Preliminary Approval Order, notice to the Class commenced on June 2,

2017.  Notice Declaration of Brandon Schwartz Regarding Notice and Settlement Administration

("Decl. of Settlement Admin.") at ¶ 3.  The notice plan (the "Notice Plan") is comprised of four

parts:  (1) print publication notice, which appeared in *People* magazine's June 23, 2017 issue, (2)

internet banner advertising, running from June 2, 2017 through July 13, 2017 on over 3 million

websites including AOL.com, MSN.com, and WSJ.com, along with Spanish language websites

such as Univision.com, Telemundo.com, and Vogue.es, (3) press release notice, which was distributed over PR Newswire's US1 and National Hispanic newslines on June 5, 2017, and (4) a dedicated settlement website, www.GordonSettlement.com. *See id.* at ¶¶ 4-8. In addition, the Settlement Administrator maintains a toll-free telephone number with an Interactive Voice Response ("IVR") system, to answer questions and provide information to Class Members. *See id.* at ¶ 9.

The content of the Notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery, to request exclusion from the Settlement Class, or to object to the Settlement or Class Counsel's request for attorneys' fees. *See* Declaration of Allen Carney ("Carney Decl.") at ¶ 33. To date, not one Settlement Class Member has objected to or requested exclusion from the Settlement. *See* Decl. of Settlement Admin. at ¶¶ 10-11; *see also* Carney Decl. at ¶¶ 7 and 35-36

## III.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES.

### A.  CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE.

The United States Supreme Court, as well as courts in the Second Circuit, recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885); *Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 47 (2d Cir. 2000) (noting "[t]here is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *In re Twinlab Corp. Sec. Litig*., 187 F. Supp. 2d 80, 84 (E.D.N.Y. 2002) (stating that attorneys who create a common fund are "entitled to a reasonable fee" (quotations omitted));

*Slomovics v. All For A Dollar*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) ("Under the 'equitable fund' doctrine, attorneys for the representative plaintiffs in a class action litigation may petition the court for compensation from any benefits which were achieved as a result of their efforts."). Thus, an award of attorneys' fees is appropriate where plaintiff's successful litigation confers a substantial benefit on members of a class. *See Hall v. Cole*, 412 U.S. 1, 5 (1973).

Here, Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering a $1.1 million cash settlement for the benefit of the Settlement Class. The Stipulation, preliminarily approved by the Court, provides that the "parties agree that Plaintiff's Counsel may apply for an award of attorneys' fees and reasonable, actual out-of-pocket expenses from the Settlement Fund not to exceed $200,000. . . ." Stipulation at VIII(A). In addition, the notices that were disseminated via the court-approved Notice Plan informed Settlement Class Members that Class Counsel would be asking the Court for an award of attorneys' fees and expenses of $200,000 and a $5,000 service award to the Settlement Class Representative. The requested fee of $200,000 is equivalent to approximately 18% of the Settlement Fund, which is on the lower end of the range typically awarded in similar litigation. *Zink v. First Niagara Bank, N.A.*, 13-cv-01076-JJM, 2016 U.S. Dist. LEXIS 179900, at *21 (W.D.N.Y. Dec. 29, 2016) (noting that a 25% fee request is considered a "benchmark fee request"); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. Nov. 19, 1997) (noting that the "benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund").

Accordingly, and as set forth herein, Class Counsel's request is reasonable and well within the range approved by courts in similar litigation.

**B.      THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND CIRCUIT WHEN AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE.**

In consumer class settlement funds like this one, courts in the Second Circuit prefer to award fees as a percentage of the fund rather than based on the lodestar method, which looks only at the value of the time counsel spent working on the case. *See, i.e. Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998). Indeed, in 2006, a district court in the Second Circuit noted that "[a]lthough the Second Circuit has vested the lower circuits with the option of using either the percentage or lodestar methods, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach, without much cases specific analysis of the choice." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted). Under the percentage of the fund method, the district court awards a percentage of the fund created by the attorneys' efforts as their reasonable attorneys' fee. The percentage method provides "appropriate financial incentives" necessary to "attract well-qualified plaintiffs' counsel who are able to take a case to trial," and "directly align[s] [the] interests of the class and its counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).

The percentage method is preferable to courts for a number of reasons. First, it incentivizes attorneys to create the largest common fund out of which payments to the class can be made, so it "directly aligns the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litigation*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In*

*re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

Second, it is consistent with market practices, because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.") (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)).

Third, the percentage method promotes early case resolution, which is favored.  As the Second Circuit stated, it "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also In re Ramp Corp.*, 2008 U.S. Dist. LEXIS 213, at *8; *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6; *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24.  The percentage method decreases the incentive for plaintiffs' lawyers to run up the number of billable hours, which the courts consider to be one of the most significant downsides to adopting the lodestar method.  *See Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Karpus*,

2004 U.S. Dist. LEXIS 21429, at *32 (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  As the Second Circuit noted in *Goldberger*, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  209 F.3d at 48-49; *see also In re Ramp Corp.*, 2008 U.S. Dist. LEXIS 213, at *8 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *49 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *11 (S.D.N.Y. Mar. 30, 2007).  While the lodestar is helpful as a cross check when courts apply the percentage method, and in fact Class Counsel uses its lodestar as a cross check below, courts do not have to scrutinize fee records to the same extent they would if applying only the lodestar method. *See Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for purpose of lodestar cross-check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

Here, the Settlement resulted in a $1.1 million cash Settlement Fund for the benefit of the Settlement Class, plus valuable restrictions on Defendants' future advertising products as SLS-free.  Moreover, Class Counsel's fee was agreed to only after the parties agreed upon the terms of the Settlement.  These facts weigh in favor of the requested fee.  *See* Carney Decl. at ¶ 42; *see also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010); *Schneider v. Citicorp Mortg.*, Inc., 324 F. Supp. 2d 372, 378 (E.D.N.Y. 2004) (noting with approval that attorneys' fee and expense amount were separately negotiated and funded from settlement); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 71 (S.D.N.Y. 2003) (that fees were negotiated separately from settlement weighed in favor of approval).

**C.      CONSIDERATION OF APPLICABLE CRITERIA DEMONSTRATES THE REQUESTED FEE IS REASONABLE.**

**1.      The Goldberger Factors Support Class Counsel's Fee Request.**

When determining attorneys' fees, courts utilize a reasonable standard. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189-90 (2d Cir. 2008) (calculating attorneys' fees under the "presumptively reasonable fee standard").  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50 (quotations omitted). All of the *Goldberger* factors weigh in favor of granting approval to Class Counsel's fee application here, and are addressed herein in turn.

**a.      Counsel's Time and Labor.**

A significant effort was required to achieve the settlement in this matter.  Plaintiff's Counsel[1] collectively has spent 412.10 hours investigating and prosecuting this class action.  *See* Carney Decl. at ¶¶ 44-46 and Ex. 1.  Among other things, Plaintiff's Counsel spent a significant amount of time engaging in pre-suit investigation, drafting and filing the complaint, successfully opposing Defendants' motion to dismiss, propounding discovery and reviewing documents produced by the Defendants and their written discovery responses; analyzing data to prepare for settlement negotiations; negotiating the terms of the Settlement Agreement; overseeing the notice

---

[1] "Plaintiff's Counsel" refers collectively to Carney Bates & Pulliam, PLLC ("CBP" or "Class Counsel") and the Law Office of Thomas M. Mullaney, attorneys for Plaintiff Lori D. Gordon, individually.

process; and seeking and obtaining preliminary approval of the Settlement. *See id.* at ¶ 46.  The time and labor expended by Plaintiff's Counsel's in this case weighs in favor of the requested fee.

### b.   Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case is a significant factor to be considered in determining a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception.  Indeed, as further discussed in Plaintiff's Memorandum of Law in Support of Motion for Final Approval, Defendants have raised vigorous defenses to Plaintiff's claims.  For example, Defendants have stated they would challenge the propriety of a price premium model of damages.  Thus, to prove damages would likely involve a battle of the experts and it is impossible to predict which expert and theory of damages a jury would accept.  Additionally, further litigation would require the time, expense, and inherent risks associated with class certification and a likely motion for summary judgment.

Moreover, this case was a private action of consumer's claims, not one piggy-backed on a governmental action. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ("[T]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill. They did all the work on their own.").  Thus, this factor supports approving Class Counsel's fee request.

### c.   Risk of Litigation

The risk of litigation is an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an

award.  *Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir. 1974).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed."  *Id*. at 471.  "It is well established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated.  *Goldberger*, 209 F.3d at 55.  As stated in *In re Dreyfus Aggressive Growth Mut. Fund Litig*., No. 98 CV 4318 HB, 2001 U.S. Dist. LEXIS 8418 (S.D.N.Y. June 22, 2001), "[c]ontingency risk is the principal, though not exclusive factor courts should consider in their determination of attorneys fees."  *Id*. at *24; *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig*., 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Here, Class Counsel undertook this case on a wholly contingent fee basis, without an assurance of payment for their services, knowing the litigation could last for years and would require the expenditure of hundreds, if not thousands, of attorney hours and significant out-of-pocket expenses, with no guarantee of compensation.  Carney Decl. at ¶ 41.  Nonetheless, Class Counsel committed significant resources to the vigorous prosecution of this litigation.

Moreover, beyond the contingency risk, the facts and circumstances of this case presented hurdles to a successful recovery.  As noted above, consumer class action cases are, by their very nature, complicated and time-consuming.  Here, Plaintiff faced serious litigation risks and uncertainties, including achieving and maintaining class certification, and establishing liability and damages, making it far from certain that any recovery would be achieved.  While Class Counsel is confident in its ability to prove Plaintiff's case, the Settlement avoids the risks inherent in further litigation. The existence of these litigation risks weighs in favor of approval of the requested fee because "[s]uccess, at least of the magnitude of the settlements at issue, was very far from assured."

12

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 Civ. 5755, 2006 U.S. Dist. LEXIS 84621, at \*14 (S.D.N.Y. Nov. 16, 2006).

### d.      Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at \*31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).   Here, Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. *See* Carney Decl. at ¶ 2 and Ex. 2.   Class Counsel's experienced representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees. *See, i.e. Velez*, 2007 U.S. Dist. LEXIS 46223, at \*25 ("Lead Counsel's experience representing plaintiffs in class actions" contributed to a finding 33.33% a reasonable fee award.); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ("Counsel is experienced in class action lawsuits, having participated in similar actions in the past.").   Ultimately, "the quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55; *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'") (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).   Here, Defendants agreed to pay a total of $1,100,000 to settle this litigation.   This result is an excellent recovery that was achieved efficiently even though Class Counsel faced tenacious opposition from Defendants' counsel, a highly regarded defense firm. *See In re NASDAQ*, 187 F.R.D. at 489 (noting as factor in reasonableness of hours expended that defense counsel included large defense firms with extensive budgets).   Accordingly, this *Goldberger* factor supports Class Counsels' fee application here.

13

### e.      Fee in Relation to the Settlement.

Courts also consider the requested attorneys' fees in relation to the size of the settlement to ensure that the percentage award does not constitute a "windfall" for Class Counsel. *See, e.g., In re Gilat Satellite Networks, Ltd*., No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at **23-24 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (citing *In re Indep. Energy Holdings PLC Sec. Litig*., 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)). Where the size of the fund is relatively small, courts will find a higher percentage award reasonable. *See, e.g., Frank*, 228 F.R.D. at 189. Courts in the Second Circuit routinely award one-third of the fund for attorneys' fees in class action settlements similar to this one. *See Maley v. Del Global Technologies Corp*., 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (awarding one-third fee on a $11.5 million settlement fund); *Cohen v. Apache Corp*., No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding one-third of a $6.75 million fund); *In re Crazy Eddie Sec. Litig*., 824 F. Supp. 320 (E.D.N.Y. 1993) (awarding 33.8% of a $42 million settlement fund); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 CIV 4270 (PAC), 2009 WL 5851465, at *6 (S.D.N.Y. Mar. 31, 2009) (Crotty, J.) (awarding 33% from a fund of over $3 million).

Moreover, the requested fee award of $200,000 here *includes* reimbursement of the expenses that Class Counsel advanced for the benefit of the Settlement Class. In other words, Class Counsel are not asking for separate reimbursement of costs on top of the $200,000 amount, which is typical in common fund cases. *See McGreevy v. Life Alert Emergency Response, Inc*., No. 14 Civ. 7457 (LGS), 2017 U.S. Dist. LEXIS 65085, at *21 (S.D.N.Y. April 27, 2017) (finding counsel "is entitled to reimbursement of reasonable litigation expenses from the settlement fund"); *Long v. HSBC USA, Inc*., No. 14 Civ. 6233 (HBP), 2016 U.S. Dist. LEXIS 124199, at *46-7

14

(S.D.N.Y. Sept. 13, 2016) (finding reimbursement of litigation costs for filing fees, damages expert fees, travel expenses, and postage charges, among others, were necessary to the representation of the clients and granting reimbursement of litigation expenses in the amount of $19,136.00).  Here, Plaintiff's Counsel have incurred $9,113.96 in unreimbursed costs in connection with investigating the claims, retaining experts, travel, legal research, postage, and other customary litigation expenses.  *See* Carney Decl. at ¶ 48.  These costs were reasonably incurred in furtherance of the investigation, prosecution, and Settlement of the Action and should be reimbursed as part of the fee award.

Accordingly, a fee of approximately 18% of the Settlement Fund of just over $1.1 million is reasonable and consistent with awards in class litigation in this circuit.[2]

### f.       Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees.  In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 396.  Many courts have recognized that fee awards in cases such as this serve the dual purpose of encouraging representatives, acting as "private attorneys general," to seek redress for damages and discourage future misconduct of a similar nature.  *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) (citations omitted), reversed and remanded on other grounds, 438 F.2d 825 (2d Cir. 1970); *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973).  Class actions in particular have

---

[2] Even to extent that a small reverter is made to Defendants, which pursuant to the Stipulation would not exceed $150,000, the requested fee is equivalent to 21% of the Settlement, still well within the range of reasonableness and consistent with awards in class litigation in this circuit.

been recognized as an invaluable safeguard of public rights. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).

Especially with relatively small class action settlements, like here, awarding attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189.  Approval of the requested fees and expenses would be fully consistent with these important public policy considerations. As stated in *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003):

> [P]ublic policy considerations support a substantial fee award. . . the Settlements have produced significant and lasting benefits for America's merchants and consumers.  The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future.

Here, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The award of Class Counsel's requested fees will encourage the prosecution of similar claims and further a significant goal of public interest.  Accordingly, all the *Goldberger* factors justify granting Class Counsel's requested fees as reflected in the Stipulation.

## IV.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS THE REQUESTED ATTORNEYS FEES AND COSTS.

The lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements."  *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014); *In re Interpublic Sec. Litig.*, 2004 U.S. Dist. LEXIS 21429 at *32.  At most, the lodestar method should be used as a "baseline" or as a "cross check" to ensure the award here is not an "unwarranted windfall."  *Goldberger*, 209 F.3d at 49-50.  "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Id*. at 50.  Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]"  *Id*. As part of the cross-

check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005). There is a strong presumption that the lodestar is reasonable. *See Perdue v. Kenny A. ex rel Winn*, 130 S. Ct. 1662, 1669 (2010); *Arbor Hill*, 522 F.3d at 190 (2d Cir. 2008) (adopting the "presumptively reasonable fee" terminology).

Plaintiff's Counsel spent approximately 412.10 hours litigating and settling this matter. Carney Dec. at ¶¶ 44-46 and Ex. 1. These hours result in a lodestar of $225,721.00. *Id*. at ¶ 46. As such, the award sought reflects a negative adjustment on the documented lodestar. *Id*. at ¶ 47. Notably, this negative multiplier exists prior to subtracting Class Counsel's reasonably incurred litigation costs and prior to Class Counsel fulfilling their considerable remaining obligations to the Settlement Class. Thus, even at present, the multiplier falls well below the range of multipliers approved as reasonable in similar class action cases. *See, e.g., In re Credit Default Swaps Antitrust Litig*., No. 13-MD-2476 (DLC), 2016 U.S. Dist. LEXIS 54587, at *54 (S.D.N.Y. Apr. 26, 2016) (approving fees constituting a "multiple of just over 6" times the lodestar); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 991 F. Supp. 2d 437, 448 (E.D.N.Y. 2014) (approving multiplier of 3.41); *Asare v. Change Grp. New York, Inc*., No. 12 Civ. 3371 (CM), 2013 U.S. Dist. LEXIS 165935, at *51 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *In re Lloyd's Am. Trust Fund Litig*., 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at *78-79 (S.D.N.Y. Nov. 26, 2002) (finding that the "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit);

*Maley*, 186 F. Supp. 2d at 371 ("in 'cross-checking' the percentage fee against the lodestar-multiple, it clearly appears that the modest multiplier of 4.65 is fair and reasonable.").

In short, the lodestar and negative multiplier here confirms the fairness of the requested fee award. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ("This resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel.").

## V.   THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED.

Service or "[i]ncentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs." *Babcock v. C. Tech Collections, Inc.*, No. 1:14-cv-3124, 2017 U.S. Dist. LEXIS 44548, at *21 (E.D.N.Y. Mar. 27, 2017) (citing *Parker v. Jeckyll & Hyde Entm't Holdings, LLC*, 2010 U.S. Dist. LEXIS 12762, at *1 (S.D.N.Y. 2010)).

Here, Class Counsel seek, and Defendants do not oppose, a service award in the amount of $5,000 for the Settlement Class Representative. *See* Stipulation at VIII(C). The requested service award is well justified under the circumstances of this Action. Throughout this Action, the Class Representative has invested substantial time in collaborating and communicating with Class Counsel, monitoring the litigation, and reviewing case filings and other pertinent documents, as well as subjected herself to public attention by suing Defendants. *See* Carney Decl. at ¶ 50. To date, no Settlement Class member has objected to the award of a service award to the Class Representative. *Id.* Accordingly, the requested service award is reasonable. *See Babcock,* 2017 U.S. Dist. LEXIS 112425 ($2,500); *Parker,* 2010 U.S. Dist. LEXIS 12762, at *5 ($15,000);

18

*Mohney*, 2009 WL 5851465, at *6 (Crotty, J.) (awarding $6,000 each to 14 class representatives); *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001) (approving $10,000 incentive awards drawn from a common fund); *McBean v. City of N.Y*., 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (approving incentive awards ranging from $25,000 to $30,000 as "fall[ing] solidly in the middle of the range" of those approved "across a variety of class actions"); *see also Haught v. Summit Res., LLC*, No, 1:15-cv-0069, 2016 U.S. Dist. LEXIS 45054, at *19- 20 (M.D. Pa. Apr. 2016) (approving $15,000 in service awards for class representatives, noting that service awards typically range "from $1,000 to $50,000" each); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) ($10,000); *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *27 (N.D. Cal. Mar. 6, 2014) (holding that "a $5,000 incentive award is presumptively reasonable").

## VI.    <u>CONCLUSION.</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Approval of Attorneys' Fees and Service Award, and enter an Order: (i) approving attorneys' fees and costs in the amount of $200,000, or approximately 18% of the Settlement Fund; and (ii) awarding the Settlement Class Representative in this case a service award in the amount of $5,000.00.

Dated:  June 26, 2017                    Respectfully submitted,

Thomas Mullaney (TM 4274)
**LAW OFFICES OF THOMAS M. MULLANEY**
489 Fifth Avenue, Suite 1900
New York, NY 10017
Tel: 212-223-0800
tmm@mullaw.org

*Attorney for Plaintiff Lori D. Gordon, Individually*

-AND-

Allen Carney (*Pro Hac Vice*)
David Slade (*Pro Hac Vice*)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St
Little Rock, AR  72201
Tel:  (501) 312-8500
Fax:  (501) 312-8505
acarney@cbplaw.com
toldham@cbplaw.com

*Counsel for the Proposed Settlement Class*

BY:    */s/ Allen Carney*
        ALLEN CARNEY (AR BAR NO. 94122)

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on June 26, 2017, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Allen Carney*         
ALLEN CARNEY
